1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10 | **Case No. 1:13-cv-00248 AWI MJS (HC)**

**ALBERT RALPH GUZMAN,**
11 | **FINDINGS AND RECOMMENDATION**
Petitioner, | **REGARDING PETITION FOR WRIT OF**
12 | **HABEAS CORPUS**

v.
13

14

**KIM HOLLAND, Warden,**
15

Respondent.
16

17

18      Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19 corpus pursuant to 28 U.S.C. § 2254. Respondent, acting warden of California

20 Correctional Institution in Tehachapi, is hereby substituted as the proper named

21 respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent

22 is represented by Caely Fallini of the office of the California Attorney General. Petitioner

23 declined magistrate judge jurisdiction on March 15, 2013. (ECF No. 5.)

24 **I.     PROCEDURAL BACKGROUND**

25      Petitioner is currently in the custody of the California Department of Corrections

26 pursuant to a judgment of the Superior Court of California, County of Kern, following his

27 conviction following a jury trial on July 15, 2009, for possession of a weapon while

28 confined in a penal institution with enhancements for prior convictions under California

Three Strikes Law. (Clerk's Tr. at 87.) On August 11, 2009, Petitioner was sentenced to a determinate term of nine years in state prison. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, on March 23, 2010. (Lodged Doc. 1.) On December 29, 2010, the appellate court affirmed the conviction but reversed the trial court's findings regarding Petitioner's prior convictions. (Lodged Doc. 3.) Petitioner sought review by the California Supreme Court on February 9, 2011. (Lodged Doc. 4.) The petition for review was summarily denied on March 16, 2011. (Lodged Doc. 5.) Petitioner next filed a petition for writ of certiorari with the United States Supreme Court on February 7, 2012. (Lodged Doc. 6.) The petition was denied on February 21, 2012. (Lodged Doc. 7.)

Petitioner filed his federal habeas petition on February 19, 2013. (Pet., ECF No. 1.) The petition raised a single ground for relief, namely, that California Penal Code § 4502 is unconstitutionally vague and should not be applied to the possession of razor blades, which may be used for other purposes than as a weapon.

Respondent filed an answer to the petition on June 12, 2013. (Answer, ECF No. 11.) Despite requesting extensions of time, Petitioner did not file a traverse to the answer.

## II.   STATEMENT OF THE FACTS[1]

> On February 3, 2009, appellant was transferred to California Correctional Institution (CCI) in Tehachapi from a San Bernardino County jail. As part of inmate reception procedures, inmates must pass through a walk-through metal detector wearing only their underwear. When appellant passed through, he set off the metal detector alarms. Supervising Sergeant William Kelly asked appellant if he had any contraband. Appellant admitted he had razor blades, and was escorted to the restroom, where he removed the finger of a glove, tied off at the end, from his rectum. Inside the glove finger were a number of items, all wrapped in toilet paper and cellophane: 11 single razor blades, apparently removed from disposable shavers; one razor blade still in the plastic casing of a shaver head with the handle broken off; a piece of paper with addresses and telephone numbers written on it; and magazine clippings.

---

[1] The Fifth District Court of Appeal's summary of the facts in its December 29, 2010 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

Appellant was charged with one count of possession of a sharp instrument while confined in a penal institution, with two special allegations regarding appellant's prior strike conviction and his prior prison term served.

At the pretrial hearing, with appellant present, the trial court confirmed with defense counsel that appellant was going to admit his prior strike allegation and prior prison term when he testified at trial and the jury was not going to try the priors. The trial court also ruled on the use of appellant's prior felony convictions for purposes of impeachment, permitting the prosecution to use three of appellant's prior convictions, and excluding one of his two 2005 convictions, as it was too similar to the other 2005 conviction. The court noted the allowed prior convictions were for crimes of moral turpitude and would impact appellant's credibility. The court also noted the convictions were recent or close in time to releases from prison. Finally, the court noted the current charge was dissimilar to the priors and appellant's decision to testify would suffer no impact from allowing the prosecution to present evidence of his prior convictions. No mention was made of a gang enhancement to one of the prior convictions at that time.

At trial, Officer Richard Hetzel and Lieutenant Jeffory Gentry testified that certain prisoners were allowed to possess disposable shavers, depending on their classification level within the prison. Appellant, however, being slated for "Administrative Segregation," was not allowed to have any razors in his possession. The correctional officers also testified as to the potential use of exposed razors as weapons or slashing instruments. No inmate is permitted to possess razor blades removed from the disposable shaver casing. All inmates are issued the same type of shaver throughout the prison.

Upon taking the stand, the court advised appellant of his right to remain silent, but appellant chose to continue with his testimony. He then admitted he was currently incarcerated for robbery, and had prior convictions for auto theft and methamphetamine possession for sale.

Appellant also testified he had previously been incarcerated at CCI and believed the razor blade quality there to be inferior to the razors he received in San Bernardino. He intended to bring the razors solely for shaving. He had brought multiple razors because he did not want to wait for his family to put money into his account so he could buy razors from the canteen.

On cross-examination, the prosecution brought up appellant's robbery conviction again, asking, "isn't it right that that robbery conviction was committed for the benefit of a criminal street gang?" Defense counsel objected on relevance grounds, which the court initially sustained, but after an unreported discussion, the court allowed the prosecution to move forward with the question. Appellant then admitted he was convicted of robbery for the benefit of a criminal street gang. Later, the court put on the record the unreported discussion. Defense counsel argued admission of the enhancement was more prejudicial than probative since there was no gang enhancement for the offense at bar. The prosecution argued the gang enhancement was a separate charge, which had been found to be true. The court allowed the admission and noted the gang enhancement was also a crime of moral turpitude and relied on the same reasoning as it

had in allowing the prior convictions.

The jury instructions stated the jury could consider "evidence that the object could be used in a harmless way in deciding if the object is a sharp instrument." (CALCRIM No. 2745.) While deliberating, the jury asked the court for a legal definition of "sharp instrument." The court explained there was no legal definition of the phrase and directed the jurors to the jury instruction, which stated in pertinent part, "[w]ords and phrases not specifically defined in the instructions are to be applied using their ordinary, everyday meanings." The jury then noted a discrepancy in the wording between the verdict form and the jury instructions on the elements of the crime. The verdict form used the word "weapon" whereas there was no mention of "weapon" in the instructions, only "sharp instrument." The trial court modified the verdict form to conform to the instructions, removing mention of the word "weapon." The jury then found appellant guilty of possessing a sharp instrument while in a penal institution. After the jury was excused, appellant expressly admitted his prior strike conviction and his prior prison term alleged in the information.

People v. Guzman, 2010 Cal. App. Unpub. LEXIS 10304, 3-7 (Dec. 29, 2010).

## II.  DISCUSSION

### A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.  Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution

1  or laws of the United States. 28 U.S.C. § 2254(a); <u>Williams v. Taylor</u>, 529 U.S. at 375 n.

2  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

3  state court proceedings if the state court's adjudication of the claim:

4     (1) resulted in a decision that was contrary to, or involved an
      unreasonable application of, clearly established federal law, as
5     determined by the Supreme Court of the United States; or

6     (2) resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in the State
7     court proceeding.

8  28 U.S.C. § 2254(d).

9                    1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

10        A state court decision is "contrary to" federal law if it "applies a rule that

11  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

12  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

13  result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06.

14  "AEDPA does not require state and federal courts to wait for some nearly identical

15  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

16  even a general standard may be applied in an unreasonable manner" <u>Panetti v.</u>

17  <u>Quarterman</u>, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

18  "clearly established Federal law" requirement "does not demand more than a 'principle'

19  or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state

20  decision to be an unreasonable application of clearly established federal law under §

21  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

22  (or principles) to the issue before the state court.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-

23  71 (2003).  A state court decision will involve an "unreasonable application of" federal

24  law only if it is "objectively unreasonable."  <u>Id.</u> at 75-76, quoting <u>Williams</u>, 529 U.S. at

25  409-10; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In <u>Harrington v. Richter</u>, the

26  Court further stresses that "an *unreasonable* application of federal law is different from

27  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing <u>Williams</u>, 529

28  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

1    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

2    correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

3    U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

4    have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

5    Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

6    Federal law for a state court to decline to apply a specific legal rule that has not been

7    squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

8    (2009), quoted by Richter, 131 S. Ct. at 786.

9                            2.       Review of State Decisions

10         "Where there has been one reasoned state judgment rejecting a federal claim,

11   later unexplained orders upholding that judgment or rejecting the claim rest on the same

12   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

13   "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

14   (9th Cir. 2006). Determining whether a state court's decision resulted from an

15   unreasonable legal or factual conclusion, "does not require that there be an opinion from

16   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

17   "Where a state court's decision is unaccompanied by an explanation, the habeas

18   petitioner's burden still must be met by showing there was no reasonable basis for the

19   state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

20   not require a state court to give reasons before its decision can be deemed to have been

21   'adjudicated on the merits.'").

22         Richter instructs that whether the state court decision is reasoned and explained,

23   or merely a summary denial, the approach to evaluating unreasonableness under §

24   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

25   or theories supported or, as here, could have supported, the state court's decision; then

26   it must ask whether it is possible fairminded jurists could disagree that those arguments

27   or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

28   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

                                              6

1  was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

2  authority to issue the writ in cases where there is no possibility fairminded jurists could

3  disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

4  it yet another way:

5      As a condition for obtaining habeas corpus relief from a federal
   court, a state prisoner must show that the state court's ruling on the claim
6  being presented in federal court was so lacking in justification that there
   was an error well understood and comprehended in existing law beyond
7  any possibility for fairminded disagreement.

8  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

9  are the principal forum for asserting constitutional challenges to state convictions." Id. at

10  787.  It follows from this consideration that § 2254(d) "complements the exhaustion

11  requirement and the doctrine of procedural bar to ensure that state proceedings are the

12  central process, not just a preliminary step for later federal habeas proceedings." Id.

13  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

14            3.   Prejudicial Impact of Constitutional Error

15      The prejudicial impact of any constitutional error is assessed by asking whether

16  the error had "a substantial and injurious effect or influence in determining the jury's

17  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

18  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

19  state court recognized the error and reviewed it for harmlessness).  Some constitutional

20  errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

21  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

22  (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

23  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

24  Strickland prejudice standard is applied and courts do not engage in a separate analysis

25  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

26  v. Lamarque, 555 F.3d at 834.

27  ///

28  ///

1    **III.    REVIEW OF PETITION**

2         **A.    Claim One: California Penal Code § 4502 is Unconstitutionally Vague**

3         Petitioner claims that California Penal Code § 4502 is unconstitutionally vague

4    within the meaning of the Due Process Clause of the Fourteenth Amendment.

5    Specifically, Petitioner contends that the phrase "sharp instrument" is unclear, especially

6    in the context of items such as razor blades, which inmates are allowed to possess and

7    are capable of other, non-harmful uses.

8              1.    State Court Decision

9         Petitioner presented this claim by way of direct appeal to the California Court of

10   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

11   appellate court and summarily denied in a subsequent petition for review by the

12   California Supreme Court. (See Lodged Docs. 3, 5.) Because the California Supreme

13   Court's opinion is summary in nature, this Court "looks through" that decision and

14   presumes it adopted the reasoning of the California Court of Appeal, the last state court

15   to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3

16   (1991) (establishing, on habeas review, "look through" presumption that higher court

17   agrees with lower court's reasoning where former affirms latter without discussion); see

18   also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

19   look to last reasoned state court opinion in determining whether state court's rejection of

20   petitioner's claims was contrary to or an unreasonable application of federal law under

21   28 U.S.C. § 2254(d)(1)).

22        In denying Petitioner's claim, the California Court of Appeal explained:

23   II. Section 4502 Is Not Unconstitutionally Vague.

24        Appellant next contends section 4502, subdivision (a), is
     unconstitutionally vague, thus violating his due process rights. He argues
25   the phrase "sharp instrument" is unclear, and there is a discrepancy
     between what the statute facially punishes and what courts have
26   interpreted to be permitted despite the statute's mandate. Appellant
     specifically contends that "an inmate has no way of knowing whether
27   possession [of] an item not expressly permitted, but capable of a harmless
     use, is a violation of the statute" until tried by a jury.

28

8

Section 4502, subdivision (a), provides in pertinent part:

> "Every person who, while at or confined in any penal institution, while being conveyed to or from any penal institution,  or while under the custody of officials, officers, or employees of any penal institution, possesses or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or *sharp instrument*, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony …." (Italics added.)

"'[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' [Citations.]" (<u>People v. Rodriguez</u> (1975) 50 Cal.App.3d 389, 398 (<u>Rodriguez</u>).) Thus, criminal statutes must be reasonably definite, both in providing a standard of conduct for persons subject to the statute, and in providing guidelines for law enforcement agencies and personnel. (<u>People v. Custodio</u> (1999) 73 Cal.App.4th 807, 811 (<u>Custodio</u>).) "The requisite certainty may be supplied by reference to either long established usage [citations], or legislative purpose [citation]." (<u>Rodriguez</u>, supra, 50 Cal.App.3d at p. 398.) "Use of a generic term does not, ipso facto, make a statute vague. [Citation.]" (<u>Id.</u> at p. 399.) With regard to section 4502, subdivision (a) specifically, "[t]he Legislature was not required to list every type of sharp instrument in the statutory prohibition. All that is required is that the crime must be clearly defined so that any reasonable person will know what constitutes a violation." (<u>People v. Harris</u> (1950) 98 Cal.App.2d 662, 666 (<u>Harris</u>).)

Section 4502 has a long history. "Facial attacks on section 4502 based upon claims that it is unconstitutionally vague have been rejected over the past 50 years. [Citations.]" (<u>Custodio</u>, supra, 73 Cal.App.4th at p. 811; <u>see also Harris</u>, supra, 98 Cal.App.2d at p. 666 [upholding section 4502 constitutionality where defendant contended the statute "does not define what constitutes a 'sharp instrument' and is therefore indefinite, uncertain and ambiguous"]; <u>People v. Steely</u> (1968) 266 Cal.App.2d 591, 596 (<u>Steely</u>) [upholding constitutionality where defendant claimed the statute was "uncertain with respect to the conduct that it prohibits, i.e., whether it includes conduct the purpose of which is 'commendable'"].) We follow such long-established precedent here.

From a legislative perspective, section 4502 was "enacted to protect inmates and officers of state prisons from the peril of assaults with dangerous weapons perpetrated by armed prisoners. That statute was adopted on the justifiable theory that there is greater danger of imprisoned felons becoming incorrigible and resorting to violence if they are permitted to carry upon their persons deadly weapons. The possession of such weapons by prisoners is therefore validly and wisely prohibited." (<u>Wells</u>, supra, 68 Cal.App.2d at p. 481.) Razor blades have been found to be deadly weapons for purposes of section 4574,[1] a statute analogous to

---

[1] Section 4574, subdivision (a), states in pertinent part: "… any person, who knowingly brings or
(continued…)

section 4502, which prohibits persons from bringing deadly weapons into a state prison. (See People v. Savedra (1993) 15 Cal.App.4th 738, 745.) The correctional officers testified as to their use as weapons in CCI. Razor blades thus fall squarely within the construct of the legislative intent behind the statute.

Vagueness arises, appellant argues, from a discrepancy between the strict liability nature of the statute, "punish[ing] knowing possession of anything sharp," and the possibility the statute would not apply to an item inmates were permitted to possess. (See Custodio, supra, 73 Cal.App.4th at p. 812.)[2] We disagree. The Custodio court analyzed section 4502 in the context of whether or not the law gave a person of "'"ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly...."'" [Citation.]" (Custodio, supra, 73 Cal.App.4th at p. 811.) The court concluded a person of ordinary intelligence would know what is and what is not prohibited by the statute, and would know, for example, that a pencil, which has a "legitimate and necessary purpose," would not fall under the statute unless used as a weapon. (Id. at p. 812.)

We agree with appellant's underlying premise that an inmate possessing a disposable shaver in the form and manner permitted by CCI regulations would not necessarily be subject to section 4502. However, a person of ordinary or common intelligence would know that 12 razor blades transported in a body cavity to a state prison would be a violation of section 4502. The purpose of a razor blade is to be sharp, to cut hair. Appellant had prior experience with CCI policies and procedures, even of the unit to which he was specifically being transferred. Appellant knew he was violating the provision, as demonstrated by the fact he hid the razor blades in a body cavity in an attempt to get them past security screening procedures.

Appellant claims a second discrepancy -- that jurors are instructed they may consider an object's harmless purpose to determine whether an object is a "sharp instrument" for purposes of the statute. The jury, however, need not determine whether a defendant had a specific intent to use the item as a weapon or merely for harmless purposes. (Steely, supra, 266 Cal.App.2d at p. 594 ["Proof of knowing possession of such an instrument by a state prison inmate is sufficient for conviction. The prosecution is not required to prove the intent or purpose for which the instrument is so possessed. [Citations.]"].) The jury need only make a determination that a defendant knowingly possessed a sharp instrument while confined in a penal institution, which the jury did here after careful deliberation. While they may have seemed to question the term "sharp instrument," they still reached a verdict relatively quickly -- within an afternoon. "A difficult standard does not make a statute unconstitutionally vague. [Citation.] '[S]tatutes are not automatically invalidated as vague

_____

(...continued)
sends into, or knowingly assists in bringing into, or sending into, any state prison ... any firearms, deadly weapons, or explosives ... is guilty of a felony ...."
[2] Appellant also referenced two cases to support this premise. The cases, however, discuss section 4574, which pertains to inmates possessing deadly weapons, rather than the statute at issue here. Even using the cases as analogy to the matter before us, they support our conclusion that section 4502 is not unconstitutionally vague. (People v. Martinez (1998) 67 Cal.App.4th 905, 911-912; People v. Savedra, supra, 15 Cal.App.4th at pp. 744-745.)

1

2

simply because difficulty is found in determining whether certain marginal offenses fall within their language.' [Citations.]" (<u>Rodriguez</u>, supra, 50 Cal.App.3d at p. 399, fn. omitted.) We do not find the statute to be unconstitutionally vague.

3

<u>People v. Guzman</u>, 2010 Cal. App. Unpub. LEXIS 10304, 12-18 (Dec. 29, 2010).

4

### 2.    Relevant Legal Standard

5

6

7

8

9

10

11

12

To satisfy due process, "a penal statute must define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Skilling v. United States</u>, 561 U.S. 358, 402-03, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010) (quoting <u>Kolender v. Lawson</u>, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)); <u>see also</u> <u>United States v. JDT</u>, 2014 U.S. App. LEXIS 15471, 27-28 (9th Cir. Aug. 12, 2014). "The void-for-vagueness doctrine embraces these requirements." <u>Skilling</u>, 561 U.S. at 403.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A criminal statute is unconstitutionally vague when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." <u>United States v. Harriss</u>, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954); <u>see also</u> <u>United States v. Batchelder</u>, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979). A statute will meet the certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. <u>See</u> <u>Panther v. Hames</u>, 991 F.2d 576, 578 (9th Cir. 1993); <u>United States v. Kilbride</u>, 584 F.3d 1240, 1256-57 (9th Cir. 2009) (even under heightened standards of clarity for statutes involving criminal sanctions, "due process does not require impossible standards of clarity"); <u>see also</u> <u>Maynard v. Cartwright</u>, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988) ("[o]bjections to vagueness under the Due Process Clause rest on lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk").

27

28

With regard to arbitrary and discriminatory enforcement, the Sureme Court has explained that the legislature must provide "minimal guidelines to govern law

enforcement" and "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.'" Kolender, 461 U.S. at 358 (quoting Smith v. Goguen, 415 U.S. 566, 575, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)). "[T]he Government retains 'broad discretion' as to whom to prosecute." Wayte v. United States, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (quoting United States v. Goodwin, 457 U.S. 368, 380 n.11, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)). "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Id. (citing Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)) (brackets omitted). In Wayte the Supreme Court explained:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

Wayte, 470 U.S. at 607.

    3.   Analysis

Here, it was not objectively unreasonable for the California Court of Appeal to reject Petitioner's vagueness claim concerning the phrase "sharp instrument." As explained by the state court, the term "sharp instrument" as used in California Penal Code § 4502(a) has a well-defined meaning and clearly applies to razor blades, which, by nature are sharp enough to cut hair. Petitioner does not argue otherwise. Instead, he contends that it is arbitrary to apply the statute to razor blades when they have a legitimate, harmless use. Further that in his case, he intended to use the razor blades for shaving, and only kept possession of the blades because he was being transported to a different facility which issues inferior razor blades.

To the extent the state court found the statute was not facially vague, the state

1    court's decision was not an unreasonable application of federal law. The term sharp

2    instrument clearly contemplates bladed objects, such as razor blades. At trial,

3    prosecution witnesses described that Petitioner was not allowed to have razors in his

4    possession, and no inmate is allowed to have razors removed from the casing of the

5    state issued disposable shavers. Here, Petitioner had eleven exposed razors in his

6    possession, and the state court observed that Petitioner's hiding them in his rectum

7    indicated he knew he was not authorized to possess them. Thus, contrary to Petitioner's

8    argument, there is no ambiguity that prevents "ordinary people" from understanding what

9    conduct is criminalized. In other words, an ordinary person plainly would understand that

10   the possession of razors removed from the disposable shaver casings to be prohibited

11   conduct. See Skilling, 130 S.Ct. at 2927-28.

12          Further, there is no indication that the statute was applied in an arbitrary and

13   discriminatory manner. Petitioner argues that it is arbitrary to apply the statute to an item

14   that inmates were allowed to possess. However, as described, inmates were not allowed

15   to possess razors removed from the shaver casing, and other inmates have previously

16   been prosecuted for this offense for the same conduct. Freeman v. Hornbeak, 2010 U.S.

17   Dist. LEXIS 123937, 1-3 (E.D. Cal. Nov. 9, 2010) (Petitioner was convicted of Cal. Penal

18   Code § 4502(a) when Petitioner was found to possess a razor blade and other items in

19   her vaginal cavity.); Carrillo v. Scribner, 2008 U.S. Dist. LEXIS 3326 (E.D. Cal. Jan. 16,

20   2008) (Petitioner was convicted Cal. Penal Code § 4502(a) for three razor blades hidden

21   within a Bible.).

22          The California Court of Appeal reasonably determined that the challenged statute

23   is not unconstitutionally vague when applied to Petitioner's case. Section 4502(a) put

24   Petitioner on notice that possession of sharp instruments or weapons would subject him

25   to criminal liability.  He had notice that the statute applied to his conduct because, the

26   evidence at trial established,  Petitioner was in possession of razor blades removed from

27   disposable shavers and that was unauthorized at all times Petitioner was in custody.

28   Accordingly, as the California Court of Appeal concluded, § 4502(a) unambiguously

applied to Petitioner.

Petitioner has not demonstrated any due process violation as the statute's language is sufficiently certain and definite to provide notice and prevent unfair enforcement. The California Court of Appeal's denial of this claim was not an unreasonable application of, or contrary to, Supreme Court precedent. Petitioner is not entitled to habeas corpus relief. See 28 U.S.C. § 2254(d).

**IV.   RECOMMENDATION**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   September 4, 2014        /s/ Michael J. Seng
                                 UNITED STATES MAGISTRATE JUDGE